### 4263.  COUEY *v.* THE STATE.

1. The testimony relied on by the accused to prove an alibi not being
   .such as to show the impossibility of the defendant's presence at the
   time when and the place where the crime was alleged to have been com-
   mitted, it was not error, in the absence of a written request so to do,
   to omit to instruct the jury on the law of alibi. *Shaw* v. *State*, 10 *Ga.
   App.* 776 (74 S. E. 89).
2. While not strictly accurate, under the facts of the present case, the
   following charge was not so erroneous as to require a new trial: "I
   charge you that it would not be necessary for the State to show that
   the defendant actually played cards and bet; it would be sufficient if
   it appears to you that he bet on any game played with cards. It would
   not be necessary for him to actually participate in the game; if he
   stood by, saw the game played, and bet money on it, he would be
   guilty, under the charge made against him in the accusation."
3. The evidence warranted the verdict.

                        DECIDED AUGUST 6, 1912.

Accusation of gaming; from city court of Polk county—Judge Irwin. May 17, 1912.

*W. M. Mundy,* for plaintiff in error.

*J. A. Wright, solicitor, E. S. Ault,* contra.

POTTLE, J. The proposition stated in the first headnote is well settled and needs no elaboration. The language of the statute is that before one can be convicted, it must appear that he played and bet for money at any game played with cards, dice, or balls. Strictly speaking, therefore, it must appear that one charged with a violation of this statute participated in a game. It is apparent, however, from the testimony, that the court did not mean to charge that the accused need not take part in a game. The State's witness testified as follows: "Ross Couey, the defendant, played cards and bet with us. We were all playing cards at Standpipe Hill, playing 'skin.' Some would play sitting on the ground. The ones handling the cards were the principals, and the ones standing behind were the 'pikers.' The principals would handle the cards and the 'pikers' would reach over and pick up one of the cards thrown aside by the dealer, and then throw his money in the ring and bet on his card. Ross was standing behind Dave Cason, 'piking.' I saw Ross reach down several times and pick up the cards and put his money down."

It is apparent, therefore, that what the court meant to say was that if the jury believed that the accused was a "piker," as described by the State's witness, he would be equally guilty as if he were a "principal." Manifestly this was correct. The law does not permit this form of gaming, either by "principals" or by "pikers."

*Judgment affirmed. Russell, J., absent because of illness.*